UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

ROSALIA GERBO,

                         Plaintiff,            **MEMORANDUM & ORDER**
                                                                             14-CV-4866 (MKB) (LB)

                v.

KMART CORPORATION and NATHAN'S
FAMOUS, INC.,

                         Defendants.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiff Rosalia Gerbo filed the above-captioned action against Defendants Kmart Corporation ("Kmart") and Nathan's Famous, Inc. ("Nathan's") on May 13, 2014, in the Supreme Court of the State of New York, Queens County, seeking monetary damages for injuries suffered as the result of an accident on the premises of a Nathan's restaurant. On August 15, 2014, Defendants filed a petition removing the action from the Supreme Court of the State of New York to this Court on the basis of federal diversity jurisdiction, asserting that Nathan's was fraudulently joined as a Defendant for the sole purpose of destroying diversity jurisdiction. (Notice of Removal ¶¶ 6–7, Docket Entry No. 1.) Plaintiff moves to remand the case back to the Supreme Court of New York, Queens County.[1] For the reasons set forth below, the Court remands the case to the Supreme Court of New York, Queens County.

---

[1] On October 27, 2014, Plaintiff filed a letter requesting that the Court either remand the case, *sua sponte*, or permit Plaintiff to file a motion to remand. (Pl. Opp'n Ltr., Docket Entry No. 17.) The Court treats Plaintiff's letter as a motion to remand. As discussed below, both sides have had the opportunity to be heard on the merits.

## I. Background

On April 12, 2012, Plaintiff suffered an accident while in a Nathan's restaurant, located at 66-26 Metropolitan Avenue, Middle Village, New York. (Am. Notice of Removal ¶ 11, Docket Entry No. 9.) Plaintiff commenced this action on May 13, 2014, in the Supreme Court of the State of New York, Queens County, alleging that the accident and resulting injuries were caused by Defendants' negligence. (Compl. ¶¶ 18, 31, annexed to Notice of Removal as Ex. A.) On June 25, 2014, Kmart submitted an Answer in New York Supreme Court, disputing all claims, alleging, among other defenses, contributory negligence and assumption of risk on the part of Plaintiff, and asserting crossclaims against Nathan's for contribution and indemnification. (Kmart Answer ¶¶ 39–40, 46–49, annexed to Notice of Removal as Ex. B.)

On August 15, 2014, Kmart filed a Notice of Removal removing the case from the Supreme Court of the State of New York, Queens County, to the United States District Court for the Eastern District of New York. (Notice of Removal.) On August 20, 2014, Kmart filed an amended Answer, withdrawing its crossclaims against Nathan's.[2] (Kmart Am. Answer, Docket Entry No. 4.) Nathan's filed an Answer disputing all claims against it. (Nathan's Answer, Docket Entry No. 6.) By letter dated October 27, 2014, Plaintiff opposed Defendants' Amended Notice of Removal and requested that the case be remanded to the New York Supreme Court. (Pl. Opp'n Ltr.) On November 7, 2014, Magistrate Judge Lois Bloom heard oral argument on the issue of removal. (Minute Entry for November 7, 2014, Status Conference.)

---

[2] Defendants also filed an Amended Notice of Removal, substituting Kmart's original Answer with crossclaims with an Amended Answer without crossclaims. (Am. Notice of Removal 2.)

II. **Discussion**

   a. **Standard of review**

A defendant may remove a civil action brought in state court to a federal court of original jurisdiction. 28 U.S.C. § 1441(a). Federal courts are to construe the statute narrowly, resolving any doubts against removability, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994); *Balram v. Cohen & Slamowitz, LLP*, No. 13-CV-07213, 2014 WL 527899, at *1 (E.D.N.Y. Feb. 7, 2014). The party asserting jurisdiction bears the burden of proving that jurisdiction and procedural requirements are met. *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000); *Balram*, 2014 WL 527899, at *1. A notice of removal must allege a proper basis for removal under 28 U.S.C. §§ 1441–1445. *Bankhead v. New York*, No. 13-CV-3377, 2013 WL 6145776, at *1 (E.D.N.Y. Nov. 21, 2013) ("An effective petition for the removal of a state action to federal court must allege a proper basis for the removal under sections 1441 through 1445 of Title 28." (quoting *Negron v. New York*, No. 02-CV-1688, 2002 WL 1268001, at *1 (E.D.N.Y. Apr. 1, 2002))); *see also In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) ("In determining whether jurisdiction is proper, we look only to the jurisdictional facts alleged in the Notices of Removal."). A district court must remand an action to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *see also Kenmore Assocs., L.P. v. Burke*, 367 F. App'x 168, 169 (2d Cir. 2010).

### b. The Court lacks subject matter jurisdiction

The Court has no jurisdiction over this action because the parties are not diverse. Although Kmart is a citizen of Illinois and Michigan, (Am. Notice of Removal ¶ 16), Plaintiff and Defendant Nathan's are citizens of New York, (Compl. ¶¶ 1, 5). Defendants contend that Nathan's was fraudulently joined as a Defendant in this action solely for the purpose of destroying diversity, and thus Nathan's presence does not deny this Court subject matter jurisdiction. (*Id.* ¶ 15.) Defendants further contend that although Plaintiff's accident occurred in a Nathan's restaurant, the restaurant was staffed and operated by Kmart pursuant to a Branded Menu Program Agreement ("Licensing Agreement"), therefore, Nathan's is an out-of-possession licensor and cannot be liable for the injuries suffered by Plaintiff. (*Id.* ¶ 12.)

The doctrine of fraudulent joinder prohibits a plaintiff from defeating diversity jurisdiction by improperly joining a non-diverse defendant "with no real connection to the controversy." *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010). Courts will "overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) (citation omitted). To succeed, the party alleging fraudulent joinder must prove "either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998); *see also Bounds*, 593 F.3d at 215; *Briarpatch*, 373 F.3d at 302; *B.N. ex rel. Novick v. Bnei Levi, Inc.*, No. 12-CV-5057, 2013 WL 168698, at *2 (E.D.N.Y. Jan. 15, 2013). The party alleging fraudulent joinder "bears the heavy burden of proving this circumstance by clear and convincing

evidence, with all factual and legal ambiguities resolved in favor of plaintiff." *Briarpatch*, 373 F.3d at 302 (citing *Pampillonia*, 138 F.3d at 461). In assessing whether there is fraudulent joinder the Court "is permitted to look beyond the face of the complaint to all affidavits filed by the plaintiffs and defendants in support of their motions." *Bnei Levi*, 2013 WL 168698, at *3 (collecting cases).

### i. Defendants have not shown outright fraud in Plaintiff's pleadings

A defendant must establish by clear and convincing evidence that a plaintiff's pleadings contain some false set of facts in order to prove fraud in the pleadings. *See Bnei Levi*, 2013 WL 168698, at *3 (finding that defendant's assertion that plaintiff's complaint contained a false allegation did not "meet [its] heavy burden of establishing fraudulent joinder by clear and convincing evidence").

Defendants argue that Plaintiff committed outright fraud either when she named Nathan's as a Defendant in her Complaint or by refusing to discontinue her action against Nathan's after Defendants informed Plaintiff of the Licensing Agreement. (Defs. Ltr. in Reply to Pl. Opp'n 4–5, Docket Entry No. 18.) Specifically, Defendants contend that because Plaintiff suffered her accident in a Nathan's restaurant that was independent of the Kmart store located in the same building, but sued both Kmart and Nathan's, Plaintiff must have been aware of the licensing relationship between Kmart and Nathan's at the time she filed her Complaint. (*Id.* at 4.) Defendants further contend that on July 17, 2014, prior to their removal of the action from state court, Defendants forwarded the Licensing Agreement to Plaintiff, making Plaintiff aware that Nathan's is an out-of-possession licensor. (Email dated July 17, 2014, annexed to Am. Notice of Removal as Ex. F.) Defendants argue that they have provided Plaintiff with sufficient evidence to prove that Nathan's is not a proper party and that Plaintiff's refusal to discontinue her claims

5

against Nathan's demonstrates that she has committed fraud. (Defs. Ltr. in Reply to Pl. Opp'n at 5.)

The Court is not persuaded by Defendants' argument. As an initial matter, the Complaint filed against both Defendants included allegations sufficient to state a claim as to both Defendants. Defendants have not shown that any of these allegations were fraudulent, especially where Defendants concede that they sent Plaintiff the Licensing Agreement after the Complaint was filed. Similarly, Defendants' argument that by not discontinuing the action against Nathan's after receiving a copy of the Licensing Agreement Plaintiff's pleading is fraudulent also fails because, as discussed below in Part II(b)(ii), the Licensing Agreement, on its face, does not establish that Plaintiff cannot state a cause of action against Nathan's in state court.

Defendants' reliance on *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001), (Defs. Ltr. in Reply to Pl. Opp'n 5–6), is misplaced as *Whitaker* is inapposite. In *Whitaker*, the plaintiff committed fraudulent joinder because the complaint did "not state a cause of action against [the non-diverse defendant] or seek any relief against this entity under state law." *Whitaker*, 261 F.3d at 207. That is not the case here. Plaintiff has sufficiently alleged that her injuries were caused by Nathan's negligence and seeks monetary damages from Nathan's.[3]

---

[3] To the extent that Defendants argue that Plaintiff's subjective motivation is relevant because it demonstrates an effort to avoid federal jurisdiction, "proof of this subjective motive is insufficient to establish fraudulent joinder." *B.N. ex rel. Novick v. Bnei Levi, Inc.*, No. 12-CV-5057, 2013 WL 168698, at *3 n.4 (E.D.N.Y. Jan. 15, 2013) (citing *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 189 (1931) ("[T]he motive of a plaintiff in joining defendants is immaterial, provided there is in good faith a cause of action against those joined.")); *see also In re Zyprexa Products Liab. Litig.*, No. 04-MD-01596, 2008 WL 4561628, at *3 (E.D.N.Y. Oct. 10, 2008) ("Even if non-diverse defendants are joined solely to prevent removal to federal court, fraudulent joinder is not shown if the plaintiff does in fact have a valid claim against the non-diverse defendants." (citations omitted)).

### ii. Defendants have not shown that Plaintiff cannot state a claim against Nathan's in state court

In addition to failing to show that Plaintiff committed fraud in her pleadings, Defendants have also failed to show that she cannot state a claim against Nathan's in state court. Defendants argue that because Nathan's is an out-of-possession licensor, Plaintiff cannot state a cause of action against Nathan's in state court. (Defs. Ltr. in Reply to Pl. Opp'n 6 (citing *Callanan v. Crabhouse of Douglaston, Inc.*, 712 N.Y.S.2d 127 (App. Div. 2000)).) Defendants' argument is without merit.

### 1. An out-of-possession licensor can be sued

Under New York law, an out-of-possession owner or lessor can be liable for injuries that occur on the premises if they "retain[] control over the premises or [are] contractually obligated to repair or maintain the premises." *Dalzell v. McDonald's Corp.*, 632 N.Y.S.2d 635, 639 (App. Div. 1995) (citations omitted); *see also Valenti v. 400 Carlls Path Realty Corp.*, 861 N.Y.S.2d 357, 358 (App. Div. 2008) ("An out-of-possession owner or lessor is not liable for injuries that occur on the premises unless the owner or lessor has retained control over the premises or is contractually obligated to repair unsafe conditions." (citing *Lindquist v. C & C Landscape Contrs., Inc.*, 831 N.Y.S.2d 523 (App. Div. 2007))). Thus, to sustain their burden of demonstrating that Nathan's was improperly joined, Defendants must prove by clear and convincing evidence that Nathan's did not retain control over the premises and was not contractually obligated to repair unsafe conditions. As discussed below, Defendants have not met their burden.

### 2. Defendants have not met their burden

Defendants argue that Kmart is solely responsible "for the day-to-day management and operation" of the premises. (Defs. Ltr. in Reply to Pl. Opp'n 6–7 (citing Licensing Agreement

§ 11(d), annexed to Defs. Ltr. in Support of Notice of Removal as Ex. 1, Docket Entry No. 16).) According to the affidavit of Randy Watts, an employee of Nathan's whose duties include "negotiating, drafting, and implementing licensing agreements" and who claims to be the "primary person responsible for managing the [Licensing Agreement] between Nathan's Famous and Sears Holdings Management Corporation,"[4] Nathan's "does not currently, and never has, owned, operated, controlled, managed, maintained, or staffed the subject dining facility." (Aff. of Randy Watts 1–2, annexed to Defs. Ltr. in Reply to Pl. Opp'n as Ex. B.)

Plaintiff contends that Nathan's retained a sufficient degree of control over the premises according to various sections of the Licensing Agreement. (Pl. Opp'n Ltr. 8.) For example, Plaintiff notes that the Licensing Agreement required Kmart to "adhere to [Nathan's] operating standards, as established by [Nathan's] from time to time including . . . such operating standards as relate to . . . [the] condition . . . of the [premises] . . . and specifications, standards, and procedures for operations." (Licensing Agreement § 2(b).) Kmart was additionally required to "upgrade the premises . . . in accordance with the written requirements, standards, and instructions issued by [Nathan's.]" (*Id.* § 2(d).)

While the Watts Affidavit suggests that Nathan's did not have sufficient control over the premises, it simply contradicts Plaintiff's assertion and creates a fact issue which is insufficient to satisfy Defendants' burden of establishing fraudulent joinder by clear and convincing evidence. *See Bnei Levi*, 2013 WL 168698, at *4 (remanding case because "defendants' assertions contradicting the allegations in the complaint merely create a question of fact and do

---

[4] The affidavit does not state the relationship between Sears Holding Management Corporation and Kmart, only that this Licensing Agreement permits Kmart to operate the Nathan's restaurant at issue here. (Aff. of Randy Watts 1–2, annexed to Defs. Ltr. in Reply to Pl. Opp'n as Ex. B.)

8

not rise to the level of clear and convincing evidence of fraudulent joinder"). Moreover, the Watts Affidavit fails to address a number of key issues. The affidavit does not state the affiant's title. Nor does it specify whether the affiant has any personal knowledge of Nathan's operating or system standards that Kmart is required to follow, or whether those standards were followed by Kmart. Furthermore, in its response to Plaintiff's request to admit, Kmart either denied or refused to admit that it owned, maintained, controlled, or "was a party to a contract for cleaning, maintenance and/or management" of the premises.[5] (Resp. to Pl.'s Req. to Admit, annexed to Defs. Ltr. in Support of Notice of Removal as Ex. 2.) Thus, while the evidence offered by Defendants provides support for their position, it does not contradict the evidence presented by Plaintiff in support of her allegations in the Complaint.

The cases relied on by Defendants are distinguishable as they were decided at summary judgment after the parties had an opportunity to develop the factual record through discovery. *See Valenti*, 861 N.Y.S.2d at 358–59 (affirming summary judgment); *Callanan*, 712 N.Y.S.2d at 128 (same); *Dalzell*, 632 N.Y.S.2d at 638 (same). Thus, the record was clear in each of those cases that the out-of-possession licensor had no responsibility for the accident. *See Valenti*, 861 N.Y.S.2d at 358 (affirming summary judgment where there was no triable issue of fact as to whether out-of-possession licensor violated duty); *Callanan*, 712 N.Y.S.2d at 128 (affirming summary judgment where out-of-possession licensor was not negligent because it was

---

[5] At oral argument, defense counsel argued that these denials and equivocations were necessary because "Kmart may not be responsible for the ceiling of the dining facility or the doors of the dining facility. However, it is responsible for cleaning the area in which plaintiff's accident occurred . . . ." (Tr. of Nov. 7, 2014, Status Conference 7, Docket Entry No. 23.) These assertions were never included in Defendants' submissions to the Court and would require the Court to accept Counsel's oral statements, while ignoring Defendants' written responses to Plaintiff's requests to admit.

"undisputed" that licensee installed the hazardous condition that caused the accident); *Dalzell*, 632 N.Y.S.2d at 639 (affirming summary judgment where there was no evidence out-of-possession licensor retained sufficient control over the premises).[6]

Even accepting Defendants' evidence, the Watts Affidavit and section 11(d) of the Licensing Agreement, the Court is unable to conclude that Plaintiff cannot bring a claim against Nathan's in state court in view of Plaintiff's contrary evidence, sections 2(b) and 2(d) of the License Agreement. The Licensing Agreement demonstrates that Nathan's did retain some contractual control over the premises. The issue before the Court is not whether Plaintiff will successfully assert a claim against Nathan's in state court, but whether "there is no possibility" that she can state a claim against Nathan's in state court. *See Briarpatch*, 373 F.3d at 302. The evidence suggests that there is such a possibility. Defendants have failed to establish by clear and convincing evidence that Nathan's did not exercise any control over the premises at the time of Plaintiff's accident. Consequently, the Court lacks subject matter jurisdiction and, pursuant to 28 U.S.C. § 1447(c), remands this case to state court.

---

[6] The cases relied on by Plaintiff, imposing liability on out-of-possession licensors or franchisors, similarly were decided at summary judgment. *See Toppel v. Marriott Int'l, Inc.*, No. 03-CV-3042, 2006 WL 2466247, at *7 (S.D.N.Y. Aug. 24, 2006) (collecting cases and noting that defendants failed "to cite any relevant decisions dismissing a case prior to discovery" and that all of the cases cited in the survey "dismissed plaintiffs' claims on a summary judgment motion, not, as here, on a motion to dismiss"); *Hilton v. Holiday Inns, Inc.*, No. 87-CV-1958, 1990 WL 113133, at *3 (S.D.N.Y. Aug. 1, 1990) (denying summary judgment because licensing agreement required licensee to follow established rules of operations); *Repeti v. McDonald's Corp.*, 855 N.Y.S.2d 281, 283 (App. Div. 2008) (affirming denial of summary judgment because defendant "tendered insufficient evidence to establish, as a matter of law, that it lacked control over the [premises]").

**III. Conclusion**

For the reasons discussed above, the case is remanded to the Supreme Court of the State of New York, Queens County.

SO ORDERED:

    s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: November 3, 2015
       Brooklyn, New York